UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BRENDA F.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CIVIL NO. 4:22cv62 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2015.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 14, 2010 through her date last insured of December

2

    31, 2015 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following medically determinable impairments: degenerative disc disease, degenerative joint disease, fibromyalgia, morbid obesity, obstructive sleep apnea, cough variant asthma, depression, hyperlipidemia, and benign hypertension (20 CFR 404.1521 *et seq.*).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*).

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 14, 2010, the alleged onset date, through December 31, 2015, the date last insured (20 CFR 404.1520(c)).

(Tr. 22-26).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on February 15, 2023. On April 26, 2023 the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her

3

> former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 2 was the determinative inquiry.

In support of remand, Plaintiff takes issue with the fact that the ALJ did not continue past Step 2 of the sequential evaluation and, thus, did not provide a Step 4 RFC assessment and did not proceed to determine whether Plaintiff could perform any work under Step 5. Plaintiff asserts in her brief that "the ALJ determined that Plaintiff had severe impairments..." (Pl. Brief at 4). However, Plaintiff is mistaken, as the ALJ found that although Plaintiff had medically determinable impairments, none of the impairments or combination of impairments significantly limited Plaintiff's ability to perform work and thus her impairments were not severe impairments. (Tr. 22). Thus the ALJ properly stopped the evaluation at Step 2.

Moreover, the ALJ supported her Step 2 finding with substantial evidence and provided a detailed year-by-year analysis through Plaintiff's date last insured of December 31, 2015, with citation to normal to mild exam findings; normal to mild imaging; Plaintiff's own reports to her providers; and Plaintiff's active lifestyle, most notably the often strenuous work she did in recreational farming (Tr. 23-26). The ALJ found that Plaintiff had the medically determinable impairments of degenerative disc disease, degenerative joint disease, fibromyalgia, obesity, high cholesterol, hypertension, obstructive sleep apnea, and cough variant asthma (Tr. 24). The ALJ

also found that Plaintiff treated for depression and noted that she had been taking Celexa for it since 2008, and the record reflects that this went unchanged throughout the relevant period (Tr. 24; see, e.g., Tr. 269). The ALJ further acknowledged that before her alleged onset date, Plaintiff was diagnosed with obstructive sleep apnea and that her symptoms responded well to CPAP treatment (Tr. 24, 425). The ALJ acknowledged that Plaintiff complained of intermittent back and joint pain and had positive tender point testing, but the ALJ reasonably found that Plaintiff's complaints often related to and resulted from her performing arduous recreational farming tasks (Tr. 23-26, 241, 243, 245, 259, 282-84, 290, 295, 336-37, 343-45, 378).

      The ALJ traced Plaintiff's complaints of shoulder and neck pain back to shortly before her alleged onset date, in March 2010, when Plaintiff was treated for complaints of shoulder and neck pain after lifting five-gallon feed buckets (Tr. 24, 343-45). Plaintiff also reported injuries from climbing in her barn, opening the barn door, and riding her horse (Tr. 24, 343-45). The ALJ further considered that Plaintiff complained of stress and too much responsibility with the farm, but she appeared in good spirits (Tr. 24, 343-45). The ALJ noted that an x-ray of Plaintiff's shoulder showed some bone spurs at the AC joint but was otherwise normal (Tr. 24, 414), and imaging of Plaintiff's neck was normal (Tr. 24, 413).

      The ALJ acknowledged that Plaintiff continued to report occasional symptoms in 2011 and 2012, but the ALJ also noted that Plaintiff continued to engage in physically demanding activities (Tr. 24). The ALJ noted Plaintiff's morbid obesity but also considered that Plaintiff had been able to stay active on her farm (Tr. 24, 336; *see also* Tr. 323-39). The ALJ also reasonably found that Plaintiff had been able to do a lot of travel in November 2012 (Tr. 24, 323-39). At that time, Plaintiff reported she was happy and under less stress (Tr. 323-39).

5

The ALJ found that throughout 2013, Plaintiff was able to maintain a high level of activity, such as working with cattle, traveling, exercising and farm work (Tr. 24, 284, 298, 320, 328). The ALJ acknowledged that Plaintiff had occasional wheezing with activity and received treatment for hypertension and high cholesterol (Tr. 24, 320). However, the ALJ also considered that Plaintiff nonetheless retained the ability to exercise, travel and care for her farm animals and that her doctor attributed Plaintiff's cough to her blood pressure medication (Tr. 24, 320-22). The ALJ noted that Plaintiff reported feeling better after her CPAP device was re-titrated (Tr. 24, 290-95, 309-20), and that she performed within the predicted values on a March 25, 2013 pulmonary function test (PFT) (Tr. 24, 433). The ALJ further considered that a CT scan of Plaintiff's chest showed only mild diffuse fatty infiltration of the liver and no acute process (Tr. 24-25, 409). The ALJ reasonably found that in September 2013, Plaintiff's doctor reported that Plaintiff's sleep apnea was adequately treated with a CPAP device and she had a normal oxygen saturation level (Tr. 25, 292). She additionally considered that Plaintiff had normal spirometry testing in October 2013 (Tr. 25, 437). The ALJ noted that in December 2013, Plaintiff reported she was responsible for caring for pigs, goats, a guard dog, and a donkey (Tr.25, 284-89). Her mood was much happier (Tr. 25, 284-89). She had been having marital stress, but her husband was currently on the road a lot (Tr. 25, 284-89). She indicated that she was living alone a lot and could eat better (Tr. 25, 284-89). Upon examination, Plaintiff was slightly sore and had a stiff gait when she first walked, but her mobility increased with a few steps (Tr. 25, 284-89). Plaintiff's mood had improved and she reported she enjoyed working on her farm (Tr. 25, 284-89).

By May 2014, Plaintiff's cholesterol had decreased (Tr. 25, 280-83). The ALJ considered that Plaintiff's doctor noted she had been doing a lot of heavy farm work (Tr. 25, 280-83). In

6

June 2014, Plaintiff complained of radiating back pain (Tr. 25, 274-80). But, as the ALJ noted, Plaintiff had been doing physically demanding work, such as putting in new floors, climbing ladders, scraping walls, and painting until 2:00 a.m. (Tr. 25, 274-80). She was also negative for fibromyalgia trigger points at that time (Tr. 25, 277). That same month, Plaintiff complained of back pain and stiffness and Dr. Schleck, her primary care doctor, referred her to a rheumatologist (Tr. 25, 270-73). The ALJ acknowledged that an examination revealed generalized muscle tenderness with bilateral symmetric tender points, but no weakness and normal ranges of motion, straight-leg raising tests, and reflexes (Tr. 25, 270-73). The ALJ noted that exam findings were suggestive of fibromyalgia, for which Plaintiff was prescribed Gabapentin (Tr. 25, 270-73). The ALJ acknowledged that the following month, in November 2014, Plaintiff's weight increased (Tr. 25, 257-59). Plaintiff continued to have marital problems and was stress eating (Tr. 25, 257-59). She was making a lot of fried potatoes because her husband liked that kind of food (Tr. 257-59). Plaintiff reported she was still active on the farm (Tr. 25, 257-59). The ALJ acknowledged that Plaintiff reported feeling "draggy", but also considered Plaintiff's report that her pain was better and her mood was good (Tr. 25, 257-59).

      The ALJ noted that in January 2015, Plaintiff reported intermittent muscle pain and cramps with no major flare-ups (Tr. 25, 255-56). The pain was worse with cold weather (Tr. 25, 255-56). Her rheumatologist continued her on Celexa, Mobic, and Gabapentin for her fibromyalgia, with 10mg Flexeril at night as needed for any flare-ups (Tr. 255-56). The ALJ noted that by April 2015, Plaintiff had been able to lose five pounds with water aerobics (Tr. 25, 247). The ALJ acknowledged that an examination showed some positive tender points and joint pain near Plaintiff's lower back and gluteal muscles, but her fibromyalgia had been clinically stable,

and she was continued on the same medications of Celexa, Flexeril, and Gabapentin (Tr.25, 248). Her doctor believed that she had sprained a lower back muscle doing water aerobics (Tr. 248). Later that month, Plaintiff complained of pain down her hips and into her legs (Tr. 249-53). An examination revealed some tightness in her IT bands, and she and her doctor discussed stretching and possible physical therapy (Tr. 249-53). As the ALJ noted, Plaintiff was still participating in water aerobics (Tr. 25, 249-53). The ALJ considered that an April 2015 MRI of Plaintiff's lower back showed only mild central stenosis (narrowing) and mild bilateral foraminal narrowing at L4-L5 (Tr. 25, 408). She noted that in May 2015, Plaintiff reported she had been mowing her lawn frequently (Tr. 25, 245).

      The ALJ acknowledged that at a September 4, 2015 examination, Plaintiff complained of lower and mid-back pain and she reported that she had gained six pounds (Tr. 25, 243-44). The ALJ also noted that Plaintiff's body mass index was 50.23 (Tr. 25, 243-44). At the same time, Plaintiff reported that she had been doing a lot at the farm (Tr. 25, 243-44). Upon examination, Plaintiff had diffuse muscle tenderness and bilateral symmetric tender points (Tr. 25, 243-44). Her rheumatologist diagnosed her with lower and mid-back pain related to a muscle strain from her recent work at the farm (Tr. 243-44). He advised her to take 10 mg of Flexeril at night as needed and to try local analgesics and a heating pad (Tr. 243-44). He also continued her on Mobic and Celexa for her fibromyalgia with Flexeril as needed for any flare-ups (Tr. 243-44). Finally, he encouraged Plaintiff to lose weight (Tr. 243-44). As the ALJ noted, Plaintiff nonetheless maintained her work on her farm (Tr. 25, 243-44).

      As the ALJ noted, two months before her date last insured, in October 2015, Plaintiff saw her doctor for a physical and complained of some pain in her right hand (Tr. 25, 240-41). The

claimant had been caring for 28 farm animals (Tr. 25, 241). She reported that she had fallen on her hand in mid-September and had what looked to be a mallet finger (Tr. 241). The doctor taped it to a flat tongue depressor to keep it straight for the next several weeks, especially when Plaintiff was working around animals (Tr. 241). Plaintiff had a slight valgus deformity in her right knee and she had problems stepping up and down from the examination table, but her gait was stable and she had normal strength, sensation, and range of motion in her hips, shoulders and wrists (Tr. 25, 239-41). Her doctor wanted her to get back to water exercise and regular exercise in a non-impact exercise program to help with stamina and endurance and to help with fibromyalgia-type pain (Tr. 241). Her doctor noted that Plaintiff was under stress at home with animals to care for and constant stress of relationship, and that Plaintiff usually ate only at night and then likely overate (Tr. 241). Plaintiff indicated that she would try to eat breakfast and take a noon break from farming to eat (Tr. 241).

As for Plaintiff's depression, the ALJ found that Plaintiff reported occasional mood disturbances in response to situational stressors but often appeared in good spirits and reported experiencing joy from farming (Tr. 24, 26, 239-41, 293-98, 309-14, 345-48). As the ALJ noted, in September 2015, Plaintiff's rheumatologist reported that she had been taking Celexa since 2008, and it appeared to be prescribed without change over several years (Tr. 24, 26, 244, 269).

Therefore, based on the above evidence, the Court finds that the ALJ more than sufficiently articulated and supported her Step 2 finding, and Plaintiff has not argued otherwise. Accordingly, the decision must be affirmed.

Conclusion

On the basis of the foregoing, the Commissioner's decision is hereby AFFIRMED.

Entered: July 17, 2023.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court